No. 4050

Second Circuit

MAHFOUZ v. INTERURBAN TRANS. CO.

(July 14, 1931. Opinion and Decree.)

Overton & Hunter and J. A. Robinson, of Alexandria, attorneys for plaintiff, appellant.

Hawthorn, Stafford & Pitts, of Alexandria, attorneys for defendant, appellee.

McGREGOR, J. This is a suit brought by the plaintiff against the defendant for damages on account of personal injuries alleged to have been received by him while traveling as a passenger on a bus owned and operated by the defendant. The bus on which plaintiff was riding made the trip daily from Monroe to Alexandria. On

February 17, 1927, the plaintiff was in the town of Georgetown, which is on the regular bus route from Monroe to Alexandria, and, desiring to go to Alexandria, he purchased a ticket to that place for $1.35 and boarded the first bus that came along. After he had traveled about three miles the town of Selma was reached, at which point the graveled highway runs parallel with and on the east side of the main line of the Missouri Pacific Railway Company. When the bus entered the town it was running at the rate of thirty-five miles per hour, and as it progressed through the town the bus driver says that the speed was gradually reduced to twenty-five miles per hour. In the town of Selma there is a street or road on the east side of the highway that runs in a northeasterly and southwesterly direction until it reaches a filling station on the east side of the highway, where it turns directly west several feet south of the filling station and crosses the railroad at right angles; so that there is a triangular lot between the filling station, the highway, and the other road just mentioned. When the bus reached a point one hundred twenty-five feet north of where this road crosses the highway and the railroad at right angles, the driver observed a Ford truck starting up from the little triangular lot just mentioned, right in the edge of the highway, and preparing to enter it. The driver says that as soon as he saw the truck he slowed down to twenty-five miles per hour, and that by the time he had nearly reached it he had slowed down to ten or fifteen miles per hour. Whether this is true or not we are unable to say, but, be that as it may, after the Ford truck came upon the highway it turned due west with the apparent intention of crossing it and the railroad, and, when it got in the middle

of the highway, the motor stalled and went dead. The driver of the bus says that at this moment he was within six or eight feet of the truck standing still in the middle of the road, with his own speed cut to ten or fifteen miles per hour, and that, confronted with this emergency, he turned suddenly to the right to the west and landed on the railroad where the road crossed it at right angles. The distance from the point where the turn was thus suddenly made to the point where the bus was finally stopped on the railroad was fifty-three feet, according to the testimony of a civil engineer who made a blueprint of the road and of the points adjacent to the scene of the accident. When the bus came to a standstill it was necessary for all the passengers to get out so that the driver could jack it up and get it off the railroad track back onto the highway.

After the passengers had been unloaded and the bus had been gotten off the railroad track and preparations were made to renew the journey to Alexandria, the driver took a list of the names and addresses of all passengers, about six in number. He says that at the time plaintiff complained for the first time that he had been hurt in the bus by being thrown from his seat when it ran suddenly upon and down the railroad track. Plaintiff says it was known that he was hurt before he left the bus, as some of the passengers had assisted him to get up and out. The journey was resumed, and as soon as Alexandria was reached the plaintiff was taken to a doctor's office and received medical attention at the hands of Dr. J. I. Peters, a witness for the defendant, who found him suffering from a contusion of the left shoulder and a contusion of the left side near the hip. This doctor bandaged the arm and shoulder with adhesive tape to keep them still, but

did nothing with reference to the contusion on the left side. Before bandaging the arm and shoulder, X-ray pictures of the upper portion of the body, including the shoulder joints, were made. On the next day plaintiff went to Dr. F. B. Luckett, who testified as a witness for the plaintiff. This doctor made an examination of the plaintiff's body and found about the same injuries as were found by Dr. Peters. He loosened the tape bandage on the arm and shoulder, as the plaintiff complained of it being too tight and hurting him.

This suit was filed on December 16, 1927. In his petition plaintiff alleges that from the date of the accident to the date of the filing of this suit he had been totally incapacitated for work on account of the injury received. He prays for damages in the sum of $7,043, which he itemizes as follows: $2,000 for loss of time; $5,000 for mental and physical pain and suffering and physical disfigurement; and $43 for doctor's fee and drug bills.

Before the trial Jaubert Bros. became the owners of the suit by purchase at a judicial sale, and by mutual agreement the case was tried with them as substituted plaintiffs. The judgment of the lower court rejected plaintiff's demand, and from that judgment this appeal is being prosecuted.

There are two questions of fact to be decided in this case. (1) As to whether plaintiff suffered any appreciable injury; and (2) if he did, was it the result of the negligence of the defendant's agent, the driver of the bus? Plaintiff insists in his pleadings and in his testimony that he had been totally incapacitated by the injury he received. On this point no testimony is offered but his own. At the time of the accident he was earning $125 per month, and since then, according to his testimony, he has been unable to earn any amount on account of his physical disability. It would seem that, if the injury were as serious as he contends, he could and would have produced medical testimony to that effect. Up to the time of the injury all his employment had been along the line of mercantile work, and the disability that is shown to exist in his arm and shoulder would not prevent him from doing that kind of work. But he was injured to some extent. As soon as he was taken to Alexandria he was carried to the office of Dr. Peters, who found two contusions on his body, one on the left side and one on the left arm and shoulder. The arm and shoulder were injured seriously enough to justify Dr. Peters in bandaging them with tape to prevent any motion in the shoulder joint to give it opportunity to recover from whatever sprain may have been suffered. Dr. Peters testified that he considered the injuries serious, but thought recovery should be made in a week or ten days. He never saw the plaintiff again professionally. On the next day plaintiff went to Dr. F. B. Luckett, who made a fairly thorough examination and found the same injuries that Dr. Peters had found. He loosened the bandage put on by Dr. Peters, as plaintiff complained of it being too tight. He found the plaintiff suffering considerably, and it was his opinion that plaintiff would in the ordinary course be disabled for some ten days to a month. A great deal of effort is made by counsel for defendant to discredit plaintiff's testimony to the effect that he was injured by being thrown in the bus in some way. The fact speaks for itself that he was hurt seriously on two parts of the body, and the kind of injury he received could not be received in any manner except as described by him. The fact that

others were not thrown from their seats by the sudden turning and stopping of the bus does not argue that he was not. Serious railroad and automobile accidents are happening every day wherein some are killed and some of their fellow passengers escape without injury. These contusions were found on his body immediately after the accident, and the irresistible conclusion is that they were received by him because of the sudden turning and stopping of the bus. The injuries were serious enough to require medical attention. The man certainly was disabled for several days, and his physical suffering must have been considerable, besides the fright caused by the expectation of serious impending disaster as the bus left the road and finally came to a stop in the middle of the railroad track was sufficiently serious to give rise to a fear of losing his life. All these elements taken together constitute, we think, injuries of a sufficient nature as to justify a demand for damages if the defendant, through its employee, the driver, was guilty of negligence, and if, but for this negligence, the injuries would not have been received. Furthermore, about twenty years prior to the accident, plaintiff had his collar bone broken, but this had completely healed. Counsel for defendant in their brief admit that at the time of the trial the plaintiff was suffering from this old break. While there is no evidence to this effect, if the pain that plaintiff claims to have been suffering from at the time of the trial was referable to this old break rather than to a new injury to the shoulder, it is most likely that this was caused by a new disturbance of the old break at the time of plaintiff's fall in the bus.

Under his own testimony the driver of the bus was from eighty-five to one hundred feet away when he saw the Ford truck coming upon the twenty-four foot highway with the intention of crossing. The bus driver testified that the truck was going "pretty fast" until it stalled in the middle of the highway, thus blocking the passage. When the Ford came thus to a stop, the bus was, according to the testimony of its driver, within six or eight feet of it, and, to avoid running into it, the driver turned suddenly and sharply to the right and never stopped until he was up on the railroad with the two front wheels caught between the tracks. The distance traveled during this movement was fifty-three feet. The bus driver says that when he first saw the truck coming upon the highway he immediately began to slow down and to get the bus under control, and that, if the truck had not stopped, it would have gotten out of his way in time for him to pass to the rear of the truck. But, while the driver says the distance from the point where he first saw the truck coming upon the highway was only eighty-five to one hundred feet, the defendant's witness, a civil engineer who made a blueprint of the scene of the accident, testified that this distance was one hundred twenty-five feet. So, if the bus traveled one hundred twenty-five feet while the truck was getting halfway across the highway going "pretty fast," it would have been impossible for the truck to have gotten out of the way in time to let the bus pass to its rear, even though it had not stopped. So it would appear that the driver of the bus did not slow down as much as he thinks he did. The fact that he traveled fifty-three feet climbing a railroad embankment would indicate that he was traveling rather rapidly when he discovered suddenly that the truck had stalled. It is the duty of the driver of any automobile, and particularly of a bus carrying passengers for hire, to keep his machine under such control after the discovery of

another vehicle on the road in front to avoid either a collision or other accident of a similar nature. As soon as the driver of defendant's bus saw this truck in front of him, he should have slowed down to such a speed that he could stop practically instantly in case the truck should stop in the middle of the road as it did. It is argued that stopping of the truck was not to be expected. Perhaps not. But the driver of the bus should have anticipated it to such an extent as to be able to avoid a collision in case it did stop. The moment that the truck came upon the highway it was a danger signal to be heeded at all hazards, and in the distance of one hundred twenty-five feet the driver of the bus had sufficient time to avoid any accident. It was negligence on the part of the driver to depend on the truck getting out of his way in time to avoid a collision. He contends that he had slowed down to about ten miles per hour, but, considering the distance he had traveled, one hundred twenty-five feet, after seeing the truck, and the distance of fifty-three feet he went up the railroad embankment before he stopped between the rails, he was evidently going at a much faster speed that he seems to think he was going.

Counsel for defendant quote from 10 Corpus Juris, pp. 863-867, as follows:

"The driver of an automobile or motor vehicle carrying passengers is bound to use at least reasonable and ordinary care for the protection of his passengers in driving the machine; and in driving through the streets of a city he is required to anticipate that he may meet persons or vehicles, to keep a proper lookout for them, and to use care to have his machine under such control as to enable him to avoid collisions."

This citation alone in connection with the testimony of the defendant's bus driver is sufficient to convict him of that degree of negligence to render defendant liable for any injury received by any one on account of this accident. The driver says he kept a lookout and says he saw the truck coming upon the narrow highway at a distance that is shown to be one hundred twenty-five feet. And while he did avoid a collision, he did it in such way as to inflict serious injuries upon plaintiff, one of his passengers. It is true that the sudden stopping of the truck in the middle of the road did create an emergency and possibly the bus driver does deserve credit for having avoided what might have proved to be a greater disaster than the one that did happen. But it was his duty and he had the opportunity to avoid any disaster. He saw this possible danger one hundred twenty-five feet away, and he ought to have had his bus under such control that he could avert it without hurting any of his passengers. Counsel refers to the codal definitions of force, superior force, and fortuitous event. These definitions are not applicable. The sudden stopping of this truck does not come under the heading of any one of the definitions. Over and over again it has been held that the driver of one car traveling behind another is not excusable for hitting the car in front if it stops suddenly and unexpectedly. It has been repeatedly held that the car in the rear must be held under such control that it can be stopped before it strikes the car in front. This rule is surely stronger in cases of a car crossing in front, particularly when there is ample time to put the car under control. Counsel for defendant urge that defendant is not an insurer of his passengers, and that, unless negligence is shown, there can be no recovery for injuries received. This is correct. The cases cited are not applicable, for we hold that, according to the

testimony of defendant's driver taken in connection with the way the accident happened, it was negligence. This is not a case of an accident caused by a latent defect in the machinery of the bus or the condition of the road. Everything that happened here was on account of the driver's negligent handling of a perfect machine on a perfect road. He had ample opportunity to prepare for and avert the impending disaster. Counsel ably argue that the defendant could no more guarantee against an automobile stopping suddenly in crossing the highway than it could guarantee the condition of the road. Neither could it guarantee that a car traveling in front in the same direction would not stop. Nevertheless it would be liable for all damages if it ran into such a car that unexpectedly stopped. So in this case the defendant's driver, having had ample time to get his bus under control for just such an emergency, was guilty of negligence in not doing so.

Because of plaintiff's failure to produce corroborative testimony in regard to his disability and suffering at the time of the trial, we are unable to determine the full extent of his injury. But, in view of the proved fact of negligence on the part of defendant's driver and of the immediate injury and suffering of the plaintiff, we think there should be judgment in his favor for at least $250.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, avoided, annulled, and set aside, and it is further ordered that there be judgment herein in favor of the substituted plaintiff, Jaubert Brothers, against the defendant, Interurban Transportation Company, for the sum of $250, with 5 per cent interest from December 17, 1927, and all costs in both courts.